FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUL 20 AM 10: 21

U.S. DISTRICT COURT
N.D. OF ALABAMA

TOM BOYETTE,                          )
                                      )
     Plaintiff,                       )
                                      )
vs.                                   )        CV 97-BU-0591-S
                                      )
JEFFERSON COUNTY, ALABAMA,            )        **ENTERED**
                                      )
     Defendant.                       )        JUL 20 1999

---

## MEMORANDUM OPINION

---

This case is presently pending before this Court on Motion for Summary Judgment

filed by Defendant Jefferson County, Alabama.  (Doc. 71)  The County seeks summary

judgment as to Plaintiff Tom Boyette's two remaining claims (1) First Amendment/Free

Speech, and (2)   Retaliatory Discharge/Title VII.   Mr. Boyette abandons his First

Amendment claim; therefore that claim is due to be dismissed with prejudice.  Plaintiff's

Brief in Opposition to Defendant's Motion for Summary Judgment, p. 1 n.1.

As to his retaliatory discharge claim, Mr. Boyette alleges that he was terminated for

complaining about gender discrimination.  Viewing the evidence in the light most favorable

to Mr. Boyette, the non-moving party, this Court finds that there are no disputed issues of

fact and that the County is entitled to judgment as a matter of law.

I.     SUMMARY JUDGMENT STANDARD

Summary judgment provides the parties an opportunity to test the mettle of a case

before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties bring to bear in order to ascertain whether there is a genuine need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)(quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56(e)). Summary judgment is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

A party seeking summary judgment has the initial responsibility of informing the court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party's burden is not meager; it must illuminate for the court the reasons why the non-moving party cannot or does not raise a genuine issue of material fact sufficient to support a trial. *Clark*, 929 F.2d at 608. The moving party's burden was set forth in *Clark* as follows:

> The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an

element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough to simply state that the non-moving party cannot meet its burden at trial.

*Id.* (citing *Celotex*, 477 U.S. at 323-25, 106 S. Ct. 2553-54).[1]

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)); *see Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id.*; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*

_____

[1]The Eleventh Circuit recognized that *Celotex* created "an exception to the *Adickes* [*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)] rule for [an] uncommon situation," i.e., "when neither party could prove either the affirmative or the negative of an essential element of the claim." *Clark*, 929 F.2d at 607, 608. In this "uncommon situation," the *Celotex* exception allows a moving party to carry its burden by showing or "pointing out," by reference to record, that the non-moving party cannot prove its claim. *Id.* at 607.

*sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55, 106 S. Ct. at 513. The court, however, must not weigh conflicting evidence for probity or make credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. The court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)(citations omitted). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

II.   FACTS

The County discharged Mr. Boyette from his position as a juvenile probation officer with the Jefferson County Family Court. Mr. Boyette contends that his discharge was a result of retaliation for filing a grievance alleging gender harassment and a discriminatory transfer. Mr. Boyette appealed his termination to the Jefferson County Personnel Board, which upheld his termination. He then proceeded to appeal the decision of the Personnel Board through the Alabama state court system; his discharge was upheld at every stage.

Therefore, this Court is bound by the Board's findings of fact, which were reviewed by the

Alabama state courts. *See Carlisle v. Phenix City Board of Education*, 849 F.2d 1376,

1379 (11ᵗʰ Cir. 1988).

The Alabama Court of Civil Appeals set forth the following facts:

Tom R. Boyette (employee) was a juvenile probation officer employed by the Jefferson County Family Court (employer). In a memorandum dated February 20, 1995, the employer advised the employee that he was being transferred for a six- to nine-month period to the Bessemer Intake and Probation Office. This transfer was to become effective on Tuesday, February 21, 1995. We would note that there had been some prior conversations between the employer and the employee concerning this transfer.

On February 20, 1995, the employee initiated the grievance procedure, claiming that he was being transferred for punitive reasons. The employer responded that the transfer was not punitive in nature. The employee continued to proceed through the various steps of the grievance procedure. On March 9, 1995, the employee initiated Step III of the grievance procedure. The employer did not respond to this step of the grievance procedure.

It is undisputed that the employee did not report to the Bessemer office, as directed in the February 20, 1995, memorandum.

On February 21, 1995, the employer delivered to the employee a notice of contemplated disciplinary action. The notice stated that the employer was contemplating disciplinary action against the employee because the employee had violated Personnel Board Rule 6.2(c) (conduct unbecoming an employee in the public service) and Personnel Board Rule 6.2(n) (violation of any lawful or reasonable regulation or order made and given by a superior officer). The employee responded that he wished to have a hearing before the Jefferson County Commissioner in charge of his department.

Upon receiving the employee's response, the employer scheduled the hearing for March 7, 1995, before Commissioner Mary Buckelew. The employer sent the employee a memorandum, dated February 28, 1995, advising the employee of the hearing date and notifying him that his assignment to the Bessemer Intake and Probation Office would remain in

effect pending the hearing. The memorandum stated, "If you do not report to this work assignment at 8:00 a.m. on Wednesday, March 1, 1995, you will be considered absent on leave (overtime or vacation) until your hearing before Commissioner Buckelew (37 hours)." The memorandum also stated that if the employee wished to offer a proposal prior to the hearing, he should do so in writing.

By a memorandum dated February 28, 1995, the employee offered the following proposal:

"I have conferred with several attorneys about the contemplated disciplinary action. The following was recommended to resolve the problem. The general opinion was that I have a valid grievance and that I should follow the Personnel Board rules and guidelines. The second part was to propose an agreement that both parties would abide by the results of the grievance with the Personnel Board. This action would suspend the hearing and put the move on hold until the grievance was heard by the Personnel Board."

Samuel DiPiazza, the acting Family Court Administrator, testified that he received this memorandum from the employee during their February 28, 1995, conference. DiPiazza stated that he told the employee that this proposal was not acceptable.

Jeff Sewell, the assistant county attorney assigned to this case for the disciplinary hearing, testified that after the employer scheduled the hearing, an attorney telephoned Sewell on the employee's behalf. Sewell stated that the attorney asked him if the disciplinary action would be withdrawn if the employee obeyed the order and reported to Bessemer. Sewell told the attorney that Sewell felt comfortable that this could be done because all the employer wanted was for the employee to go to Bessemer and do his job. The attorney called Sewell a couple of days later and told him that it was not going to happen.

On March 7, 1995, the employer held the disciplinary hearing and terminated the employee's employment for violation of Personnel Board Rules 6.2(c) and 6.2(n). The effective date of the termination of employment was March 8, 1995. We would note that the employee did not appear for the March 7, 1995, hearing and that no one contacted the Commissioner's office to request a continuance.

On March 17, 1995, the employee filed a notice of appeal to the Personnel Board of Jefferson County, Alabama (Board). In his notice of

appeal the employee, in response to the statement, "In answer to these charges," checked the statement "I admit, in part, to my guilt." In response to the statement, "The reason(s) that this disciplinary action should not take place is/are," the employee indicated that "[t]he action taken against [him was] too severe a penalty" and that "[t]he basis for [his] dismissal was punitive, discriminatory, and unfounded."

The Board held hearings on August 3, 1995, August 8, 1995, August 15, 1995, and August 24, 1995. We would note that both parties were represented by counsel. On August 31, 1995, the Board issued an order, sustaining the actions taken by the employer and Commissioner Buckelew in dismissing the employee.

On September 8, 1995, the employee filed a notice of appeal to the circuit court. A three-judge panel reviewed the record of the Board's proceedings and listened to oral arguments by the parties' counsel. On March 15, 1996, the circuit court issued an order, finding that "there was substantial and legal evidence to support the Board's decision" and affirming the Board's decision.

. . .

We would note that the employee's position at the hearing before the Board was as follows: The employee's refusal to report to Bessemer, as ordered, was not willful disobedience. Although he did not go to Bessemer, as ordered, he thought that the order to report to Bessemer would be held in abeyance while his grievance regarding the transfer was pending.

The employer's position at the hearing before the Board was as follows: The employee admitted that he did not report as ordered; however, he questioned the severity of the penalty imposed. The employer maintained that the disciplinary action was appropriate under the circumstances of the case--a juvenile probation officer had refused to follow an order given by his supervisor. If the employee is allowed to "get away" with refusing to comply with such an order, then other employees and the juveniles assigned to the probation officers would begin to think that they could refuse to follow orders and that nothing would happen.

. . . As previously noted, the employer told the employee that his February 28, 1995, proposal--regarding the employee's proposal that the transfer be "put on hold" and the disciplinary hearing be suspended, pending the conclusion of the grievance procedure--was not acceptable. Even after the employer initiated disciplinary proceedings against the employee, the

employee did not report to Bessemer. In fact, the employee failed to appear at the March 7, 1995, disciplinary hearing. There was testimony that the "proper way" for the employee to handle the situation was for the employee to accept the transfer to Bessemer and then to proceed with the grievance procedure.

*Boyette v. Personnel Board of Jefferson County*, 695 So. 2d 21, 22-24 (Ala. 1996).

Mr. Boyette's grievance alleged, *inter alia*, that he was being subjected to discrimination by his former supervisor, Elizabeth Still. He contends that she harassed him on the basis of his gender and that she was responsible for his being transferred to Bessemer Family Court.

## III.   DISCUSSION

For purposes of summary judgment, this Court assumes, without determining, that Mr. Boyette can establish a prima facie case of retaliation. Because Mr. Boyette has not presented sufficient evidence to raise a question of fact as to whether the County's articulated reason for his discharge is a pretext, this Court pretermits discussion of the prima facie case elements.

The County contends that Mr. Boyette was terminated because he refused an order to report to the Bessemer Family Court for a temporary assignment. There is no dispute that Mr. Boyette was ordered to report to Bessemer Family Court and that he refused to follow that order. Mr. Boyette contends that this reason is a pretext for unlawful retaliation because other, similarly situated employees were not fired for refusing to go to the Bessemer Family Court.

The Eleventh Circuit Court of Appeals has held, in a work-rule violation case such

as this one, "[A] plaintiff, in order to prove the employer's justification to be pretextual, must show either that he did not violate the work rule or that, other [employees] not within the protected class who engaged in similar acts were not similarly treated."[2] *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1501 n.1 (11th Cir. 1991)(quoting *Anderson v. Savage Laboratories, Inc.*, 675 F.2d 1221, 1224 (11th Cir. 1982)). Mr. Boyette contends that other, similarly situated employees, who did not complain about discrimination, were treated more favorably than Mr. Boyette.

Mr. Boyette has submitted evidence, in the form of an affidavit from Janice Hamm a former County probation officer, that other people, specifically Ms. Hamm and another probation officer, Georgia Walker, have refused transfers and were not discharged. In order for this Court to find a question of fact as to whether Ms. Hamm and Ms. Walker were similarly situated to Mr. Boyette, for purposes of inferring pretext, this Court must find that they committed the same work rule violation – refusing an order – and that they were punished less severely or not at all. The Eleventh Circuit Court of Appeals has mandated:

> In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. The most important factors in the disciplinary context are **the nature of the offense** and **the nature of the punishments imposed**. We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.

*Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)(internal citations and quotations

---

[2]This Court notes that there may be situations in which an employee could show the employer's articulated reason is unworthy of credence based on other evidence. *See Kendall v. Cobb County*, 14 F. Supp. 2d 1342, 1347 n.2 (N.D. Ga. 1998).

omitted).

Nothing in the evidence indicates that the County *ordered* Ms. Hamm or Ms. Walker to transfer and that they refused, despite the order. Indeed, the record contains evidence that Mr. Boyette was the only employee in thirty years to refuse an *order* to transfer. This fact distinguishes Mr. Boyette's conduct from those offered as comparators. The evidence, therefore, does not support a finding that Ms. Hamm and/or Ms. Walker are similarly situated to Mr. Boyette.

Moreover, as stated above, Mr. Boyette does not dispute that he refused to report to Bessemer Family Court despite a direct order to do so. This case is similar to the Fifth Circuit Court of Appeals case, *Smith v. Texas Department of Water Resources*, 818 F.2d 363 (5th Cir. 1987), *cert. denied*, 484 U.S. 1059, 108 S. Ct. 1012, 98 L. Ed. 2d 977 (1988). In that case, Plaintiff Ms. Smith refused to perform certain secretarial duties, despite two warnings that her refusal would result in her termination. She was given the alternative of performing these additional duties on a temporary basis. She refused to perform the duties and was terminated. The court noted that had Ms. Smith "accepted the assignment and then filed a proper complaint, she clearly would have been protected against retaliation." *Id*. at 365. The Fifth Circuit Court of Appeals noted that it had adopted a balancing test, which "requir[ed] the employee's conduct to be reasonable in light of the circumstances and balancing the employer's right to run his business against the right of the employee to express grievances and promote her own welfare." *Id*. at 366 (citing, *inter alia*, *Jefferies v. Harris County Community Action Association*, 615 F.2d 1025, 1036 (5th Cir. 1981)). Applying this test, the court found that Ms. Smith's conduct in refusing the additional duties

was unreasonable, and it noted, "We do not think Congress intended the opposition clause to protect this form of self-help." *Id.*

This rationale has been applied by numerous other courts. *See, e.g., Jackson v. St. Joseph State Hospital*, 840 F.2d 1387, 1391 (8th Cir.)("Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers."), *cert. denied*, 488 U.S. 892, 109 S. Ct. 228, 102 L. Ed. 2d 218 (1988); *Brown v. Ralston Purina Co.*, 557 F.2d 570, 572 (6th Cir. 1977)("[A]n EEOC complaint creates no right on the party of an employee to miss work, fail to perform assigned work, or leave work without notice."); *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 230 (1st Cir. 1976)("Congress certainly did not mean to grant sanctuary to employees to engage in political activity for women's liberation on company time, and an employee does not enjoy immunity from discharge for misconduct merely by claiming that at all times she was defending the rights of her sex by opposing discriminatory practices. An employer remains entitled to loyalty and cooperativeness from employees." ); *Robinson v. AFA Service Corp.* 870 F. Supp. 1077, 1085 (N.D. Ga. 1994)(Employer's knowledge of a discrimination claim does not automatically provide causal link for retaliation claim; " [w]ere the rule otherwise, then a disgruntled employee, no matter how . . . contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing or threatening to file, a discrimination complaint." (quoting *Mesnick v. General Electric Co.*, 950 F.2d 816, 828 (1st Cir. 1991), *cert. denied*, 504 U.S. 985, 112 S. Ct. 2965, 119 L. Ed. 2d 586 (1992)); *Doe v. AFL-CIO,*

Page 11 of 14

*Department of Organization, Region 6*, 405 F. Supp. 389, 394 (N.D. Ga. 1975)("[S]hould the plaintiff be so persistent or get so caught up in his beliefs that he could no longer do his job effectively . . . then his employer could lawfully discharge him for these failings. His employer could not discharge him because he advocated a position contrary to his employer's, but because his protected beliefs and actions made him ineffective . . . ."), *aff'd without opinion*, 537 F.2d 1141 (5th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S. Ct. 1127, 51 L. Ed. 2d 552 (1977).

Mr. Boyette proceeded with a form of self-help with regard to the transfer order he considered to be a form of sex discrimination. He was told the consequences of his refusal of a direct order to report to Bessemer family Court was termination and that is exactly the consequence he received. This Court can find no legal authority for it to reverse the decision of his employer resulting from his attempts at self-help, especially since there is no evidence of similarly-situated employees that were treated more favorably.

Mr. Boyette also argues that a reasonable jury could find that the County terminated him because DiPiazza was motivated by retaliation in initiating the disciplinary action, based on Mr. Boyette's assertions that DiPiazza tried to dissuade him from filing the grievance and indicated that filing the grievance would make the situation worse. However, a reasonable jury could not infer from these facts that the motivation for his termination was retaliation. The facts of this case, as recited by the Alabama Court of Civil Appeals, show that, after disciplinary proceedings were initiated, Mr. Boyette was told the disciplinary action would be withdrawn — in other words he would not have been discharged — if he would have reported to Bessemer Family Court, in accordance with the

transfer order, while his grievance was pending. Mr. Boyette refused to go to Bessemer. His position before the Personnel Board was that he did not willfully disobey the transfer order because he "thought that order to report to Bessemer would be held in abeyance while his grievance regarding the transfer was pending." *Boyette*, 695 So. 2d at 22-23. However, the facts as found by the Personnel Board and affirmed by the Alabama Court of Civil Appeals clearly show that Mr. Boyette was aware that his transfer was not delayed or held in abeyance pending the resolution of his grievance challenging the transfer. No reasonable jury could find that the grievance, filed contemporaneously with the discussion of Mr. Boyette's transfer, was a substantial motivating factor in the decision to discharge him because he would not have been fired, even though he filed the grievance, if he simply had reported to Bessemer Family Court while his grievance was pending.

Because no reasonable jury could find that The County terminated Mr. Boyette in retaliation for his filing a grievance alleging sex discrimination, The County's Motion for Summary judgment is due to be granted.

IV.    CONCLUSION

For the reasons set forth above, the Court finds that there are no disputed issues of material fact and summary judgment in favor of the County is due to be granted as a matter of law.  The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion.

DONE this _____**19th**_____ day of July, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE